UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBIN D. HERRING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  1:08-cv-1013-SEB-JMS |
| | ) |
| DISETRONIC MEDICAL SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment [Docket No. 20] filed on October 5, 2009. Plaintiff, Robin Herring, brings her claim against her former employer, Defendant, Disetronic Medical Systems, Inc. ("Disetronic"), alleging that Disetronic terminated her in violation of the Family Medical Leave Act, 29, U.S.C. §§ 2601 *et seq*. ("FMLA"). For the reasons detailed in this entry, we <u>GRANT</u> Defendant's Motion for Summary Judgment.

**<u>Preliminary Evidentiary Matter</u>**

As a preliminary matter, the Court must address certain evidentiary concerns raised by the parties. Disetronic contends that because Ms. Herring has submitted a declaration that recounts details that she previously testified during her deposition she did

not remember, her subsequent testimony must be stricken. Upon review of Ms. Herring's deposition testimony and subsequent sworn declaration, we are particularly concerned with the expansion of Ms. Herring's testimony regarding a July 26, 2006 telephone conversation she had with Disetronic's Human Resource Specialist Teresa Strobel.

In her deposition, Ms. Herring specifically testified that she could not remember "word for word" what was discussed during that conversation and that she was "not for sure what the conversation – you know, what was said in the conversation." Herring Dep. at 121-22. Ms. Herring further testified that "[t]he only thing" she could testify to about that conversation was that she and Ms. Strobel discussed "the FMLA paperwork being sent [to her]." Id. However, Ms. Herring's declaration testimony, submitted in response to Disetronic's motion for summary judgment and dated approximately five months after her deposition testimony and more than three years after the conversation occurred, significantly expands upon and conflicts with her prior deposition testimony. For example, Ms. Herring testifies in her declaration that, during the July 26th conversation, she told Ms. Strobel that she "was not sure when [she] would be able to return to work," (Herring Decl. ¶ 11), and that it would not be until August 2, 2006, at the earliest, that she would know when she would be able to return or be able to get the FMLA paperwork completed, because she could not see her treating physician until that date.[1] Id. ¶¶ 15, 26.

---

[1] This testimony contradicts Ms. Strobel's testimony regarding the details of that conversation. Ms. Strobel testified by affidavit that Ms. Herring stated that she (Herring) would be absent from work only through July 31, 2006.

Ms. Herring has given no explanation for her sudden recollection of the details of her telephone conversation with Ms. Strobel.

Under Seventh Circuit law, a plaintiff may not introduce a sworn declaration that conflicts with prior deposition testimony in an attempt to create an issue of fact to survive summary judgment. See Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir. 1999) (holding that a plaintiff cannot defeat a defendant's motion for summary judgment "merely be manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition") (citations omitted). The Seventh Circuit has ruled similarly when a party attempts to submit a declaration that includes details the party previously testified he or she could not remember without providing a sufficient explanation as to why those facts were subsequently able to be recalled. See Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998) (holding that deposition testimony that plaintiff could not recall any incidents of harassment and subsequent affidavit claiming daily harassment were in conflict and striking the corresponding portion of the affidavit); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1210-11 (7th Cir. 1993) (where an individual testified to a lack of recall about a notice on a bulletin board, he could not create a genuine issue of material fact by later testifying that there was no ADEA notice on the board).

The specific details relating to the July 26th telephone conversation testified to in Ms. Herring's declaration conflict with Herring's prior deposition testimony that she could not remember what was said during the conversation. Therefore, pursuant to well-

settled Seventh Circuit law, the Court will disregard the new and contradictory information regarding the content of the July 26th telephone conversation contained in Ms. Herring's declaration.

## Factual Background

Disetronic distributes insulin pumps and related devices to individuals afflicted with diabetes. The company's headquarters and corporate offices, including its Human Resources Department, are located in Fishers, Indiana. On May 5, 2005, Ms. Herring was hired by Disetronic as a Medical Records Document Imaging Specialist. Her duties included preparing medical records for scanning, scanning the records using both low and high-speed scanning equipment, and vertexing the scanned images by entering information into a scanned-image electronic file.

**Defendant's Attendance and FMLA Policies**

Throughout the time of Ms. Herring's employment with Disetronic, the company had in place an attendance policy, which provided in relevant part as follows:

> It is your responsibility to arrive to work on time, be ready for work and productive at the start of your scheduled shift and work the entire shift adhering to break time and lunch schedules. We recognize that it may be necessary to be absent from work occasionally. At a minimum, if you are going to be late or absent, you must:
>
> 1. Personally notify your supervisor within one hour of the time you are scheduled to begin your shift. If you are unable to reach your supervisor, you may leave him/her a voicemail at the office, but you are expected to call back and speak directly to your supervisor.
> 2. Inform your supervisor of the reason for your absence as well as how

          long you will be absent.
3.     If your initial call indicates one day of absence, anything beyond this requires another call to your supervisor.

. . .

Any "no show/no call" incident will result in progressive discipline. Any "no show/no call" involving three (3) consecutive, scheduled work days will be considered job abandonment and result in immediate termination.

Exhs. A, B.

Under the policy in place at the time of Ms. Herring's employment, Disetronic employees were allowed to take up to twelve weeks of unpaid, job-protected leave in accordance with the FMLA. In order to qualify for FMLA leave, in addition to meeting the statutory minimums with respect to months employed and hours worked, Disetronic employees were required to provide notice to the company of a need for leave at least thirty days in advance if they could anticipate the leave, or "as soon as possible" in the event the leave was not foreseeable. If an employee was out of work on FMLA leave for an indefinite period of time, Disetronic would in some cases require the employee to provide periodic reports regarding his or her status and intent to return to work. Employees were required to validate any absences they claimed were covered by the FMLA by providing to Disetronic medical certification "supporting the need for leave." Exh. 4, Dec. Exh. A.

**Plaintiff's Use of FMLA Leave**

In May 2006, Ms. Herring requested and was granted FMLA leave from May 25,

2006 through June 8, 2006, due to a scheduled gallbladder removal surgery. In accordance with Disetroinic's Attendance and FMLA policies, Ms. Herring gave her supervisor at the time, Julie Stiers, advance notice that she would need to take FMLA leave during that time period. Ms. Herring was provided FMLA certification forms for her doctor to complete so that her FMLA leave could be approved. Ms. Herring had the physician who performed her surgery complete the paperwork and she submitted it to Disetronic on her scheduled return date, June 8, 2006. When Ms. Herring returned to work, she resumed her position of Medical Records Document Imaging Specialist without penalty.

On July 18, 2006, approximately a month and a half after returning from FMLA leave following her surgery, a rash broke out on Ms. Herring's neck while she was at work.[2] Ms. Herring requested and was granted permission to leave work early so that she could seek medical attention for the skin rash. The next day, July 19, 2006, in accordance with Disentronic's attendance policy, Ms. Herring called in before the start of her shift and left Ms. Stiers a voicemail indicating that she (Herring) would not be at work that day because she was still sick. According to Disetronic, Ms. Herring did not make any other attempt that day to follow up and speak with Ms. Stiers personally. On July 20, 2006, Ms. Herring again called and left a voicemail message for Ms. Stiers. Disetronic

---

[2] Ms. Herring testified in her declaration that she became ill "on or about" July 19, 2006. However, in her prior deposition testimony she testified that she became ill and left work early on July 18, 2006. For the reasons detailed above, we rely on her deposition testimony.

contends that Ms. Herring stated that she would be absent from work because she had to take care of "something" with her daughter, but made no mention of continuing illness. However, according to Ms. Herring, she told Ms. Stiers that she remained ill and would be unable to work on that day.

On each of the subsequent three work days – Friday, July 21st, Monday, July 24th, and Tuesday, July 25th – Ms. Herring left voicemails for Ms. Stiers indicating that she (Herring) would be absent due to illness. According to Disetronic, Ms. Herring neither informed Ms. Stiers that she needed FMLA forms nor attempted to contact Human Resources. On July 26, 2006, Human Resources Specialist Teresa Strobel attempted to contact Ms. Herring because, at that point, Herring had missed more than three days of work purportedly due to illness, and Ms. Strobel was trying to determine whether Herring needed FMLA certification forms. Ms. Strobel left a voicemail requesting that Ms. Herring return her telephone call, but Herring failed to return the call that day.

The following morning, Ms. Herring again left a voicemail for Ms. Stiers indicating that she would be absent from work due to her continuing illness. That same day, Ms. Strobel telephoned Ms. Herring and, when she reached Herring, asked whether Herring needed FMLA certification forms. According to Disetronic, Ms. Herring responded that she would be absent through July 31, 2006, because her doctor had advised her to remain home from work until that date due to issues she was having with stress. Ms. Herring testified by deposition that she could not recall "word for word" what was discussed during that conversation and "the only thing" she could say is that they

7

discussed the FMLA paperwork being sent to her.[3] After their telephone conversation, Ms. Strobel mailed the necessary FMLA paperwork to Ms. Herring.

Based on Ms. Strobel's conversation with Ms. Herring, Disetronic considered Ms. Herring on approved leave through Monday, July 31, 2006, and believed that she would return to work on August 1, 2006. However, from August 1 through August 3, 2006, Ms. Herring neither reported for work nor called in to inform her supervisor that she would be absent. Because Ms. Herring was in violation of the Company's no show/no call policy on three consecutive days, on August 3, 2006, Ms. Renteria attempted to telephone Ms. Herring to inquire whether Herring had a reason for not reporting to work. When Ms. Renteria was unable to reach Ms. Herring that day, she drafted and sent Herring a letter stating that her employment with Disetronic was being terminated due to her violation of the no show/no call policy.[4] Ms. Herring's employment was subsequently terminated.

According to Disetronic, these attendance policies, particularly the "no show/no call" provisions, were uniformly enforced, and, aside from Ms. Herring, only one other employee had ever violated the policy on three consecutive days, and that employee was

---

[3] In her subsequent declaration, Ms. Herring testified that she specifically told Ms. Strobel that she (Herring) would be unable to see her treating physician until August 2, 2006, so she would not have the FMLA paperwork completed or know when she would be able to return to work until after that date. For the reasons detailed previously, this testimony is stricken because it conflicts with Ms. Herring's prior deposition testimony.

[4] The letter indicates that Ms. Renteria spoke with Ms. Herring over the telephone and informed Herring the reasons for her termination. However, Disetronic concedes that Ms. Renteria never actually spoke with Ms. Herring that day. According to Disetronic, Ms. Renteria composed the letter before attempting to contact Ms. Herring and forgot to edit it after Renteria was unable to reach Herring.

immediately terminated. Ms. Herring, however, claims that the attendance policy as written was not strictly enforced and that she followed the policy as it was practiced.

**Plaintiff Contacts Congresswoman Regarding Her Discharge**

At some point after Ms. Herring was terminated,[5] she sent a letter to Congresswoman Julia Carson explaining the circumstances surrounding her termination and indicating that, after reviewing the FMLA, she believed that she had been subjected to wrongful termination. Ms. Herring enclosed with her letter two separate completed FMLA certification forms which described her need for medical leave in late July and early August 2006. On October 16, 2006, Ms. Carson sent a letter to Ms. Renteria requesting that Renteria "look into" the circumstances surrounding Ms. Herring's discharge. On October 27, 2006, Ms. Renteria sent a letter to Ms. Carson explaining that Ms. Herring was terminated pursuant to Disetronic's "uniformly applied" no show/no call policy after she failed to report or call into work for three consecutive days.

According to Disetronic, beyond Ms. Renteria's correspondence with Ms. Carson, the Company had no other notice from Ms. Herring that she was in possession of completed FMLA certification forms or had concerns about her termination. On July 29, 2008, Ms. Herring filed her Complaint in the present litigation, alleging that her

---

[5] The letter Ms. Herring sent to Ms. Carson was undated and Ms. Herring was unable to recall in her deposition when the letter was sent. Ms. Carson subsequently contacted Disetronic regarding the letter in mid-October 2006, so it appears that Ms. Herring sent her correspondence to the Congresswoman around this time.

termination from Disetronic occurred in violation of the FMLA.

## Legal Analysis

**I.      Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  <u>See</u> <u>id.</u> at 255.  However, neither the "mere existence of some alleged factual dispute between the parties," <u>id.</u>, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  <u>Michas v. Health Cost Controls of Ill., Inc.</u>, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex</u>, 477 U.S. at 323.  The party seeking summary judgment on a claim on which the non-moving party bears

the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct

evidence is rarely available.  Seener v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996).  To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination.  However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts.  Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997).

## II.     FMLA Claim

Ms. Herring claims she was terminated for taking leave under the FMLA.  The FMLA renders it unlawful for an employer to "discharge or in any other manner discriminate against any individual" for exercising rights under the FMLA.  29 U.S.C. § 2615.  However, "[n]othing in the FMLA prohibits an employer from requiring 'an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave.'"  Hammond v. Interstate Brands Corp., 2002 WL 31093603, at *13 (S.D. Ind. Aug. 28, 2002) (McKinney, C.J.) (quoting 29 C.F.R. § 825.302(d)); see also Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706, 710 (7th Cir. 2002) (concluding that the defendant's attendance policy and company rules were "usual and customary" requirements).

In the case at bar, Ms. Herring has entirely failed to set forth admissible evidence

to contradict Disetronic's evidence establishing Ms. Herring's failures to comply with the company's attendance policy by not reporting or calling in for three consecutive days following the day that she had informed Disetronic that she would return to work. Disetronic's Attendance Policy in effect at the time of Ms. Herring's termination makes any such "no show/no call" on three consecutive days a terminable offense and Ms. Herring's employment was terminated in accord with this provision. There is no evidence adduced to show that the no show/no call policy was anything other than one of the company's "usual and customary" notice requirements. Thus, Disetronic's decision to terminate Ms. Herring for her failure to follow those requirements did not run afoul of the FMLA.

## III. Conclusion

For the foregoing reasons, we <u>GRANT</u> Defendant's Motion for Summary Judgment. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date: _____06/01/2010_____     _____
                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

Copies to:

Gregory P. Gadson
LEE COSSELL KUEHN & LOVE LLP
ggadson@nleelaw.com

Cherry Malichi
LEE COSSELL KUEHN & LOVE LLP
cmalichi@nleelaw.com

David J. Pryzbylski
BARNES & THORNBURG LLP
dpryzbylski@btlaw.com

Kenneth J. Yerkes
BARNES & THORNBURG LLP
ken.yerkes@btlaw.com